(Slip Opinion)          OCTOBER TERM, 2009          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SCHWAB *v.* REILLY

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 08–538.   Argued November 3, 2009—Decided June 17, 2010

Respondent Reilly filed for Chapter 7 bankruptcy when her catering business failed.  She supported her petition with, *inter alia,* Schedule B, on which debtors must list their assets, and Schedule C, on which they must list the property they wish to reclaim as exempt.  Her Schedule B assets included cooking and other kitchen equipment, to which she assigned an estimated market value of $10,718.  On Schedule C, she claimed two exempt interests in this "business equipment": a "tool[s] of the trade" exemption for the statutory-maximum "$1,850 in value," 11 U. S. C. §522(d)(6); and $8,868 under the statutory provisions allowing miscellaneous, or "wildcard," exemptions up to $10,225 in value.  The claimed exemptions' total value ($10,718) equaled Reilly's estimate of the equipment's market value.  Property claimed as exempt will be excluded from the bankruptcy estate "[u]nless a party in interest" objects, §522(*l*), within a certain 30-day period, see Fed. Rule Bkrtcy. Proc. 4003(b).  Absent an objection, the property will be excluded from the estate even if the exemption's value exceeds what the Code permits.  See, *e.g.*, §522(*l*); *Taylor* v. *Freeland & Kronz*, 503 U. S. 638, 642–643.

Although an appraisal revealed that the equipment's total market value could be as much as $17,200, petitioner Schwab, the bankruptcy estate's trustee, did not object to the claimed exemptions because the dollar value Reilly assigned to each fell within the limits of §§522(d)(5) and (6).  Schwab moved the Bankruptcy Court for permission to auction the equipment so Reilly could receive the $10,718 she claimed exempt and the estate could distribute the remaining value to her creditors.  Reilly countered that by equating on Schedule C the total value of her claimed exemptions in the equipment with the equipment's estimated market value, she had put Schwab and

her creditors on notice that she intended to exempt the equipment's full value, even if it turned out to be more than the amounts she declared and that the Code allowed. She asserted that the estate had forfeited its claim to any portion of that value because Schwab had not objected within the Rule 4003(b) period, and that she would dismiss her petition rather than sell her equipment.

The Bankruptcy Court denied Schwab's motion and Reilly's conditional motion to dismiss. The District Court denied Schwab relief, rejecting his argument that neither the Code nor Rule 4003(b) requires a trustee to object to a claimed exemption where the amount the debtor declares as the exemption's value is within the limits the Code prescribes. Affirming, the Third Circuit agreed that Reilly's Schedule C entries indicated her intent to exempt the equipment's full value. Relying on *Taylor,* it held that Schwab's failure to object entitled Reilly to exempt the full value of her equipment, even though that value exceeded the amounts that Reilly declared and the Code permitted.

*Held:* Because Reilly gave "the value of [her] claimed exemption[s]" on Schedule C dollar amounts within the range the Code allows for what it defines as the "property claimed as exempt," Schwab was not required to object to the exemptions in order to preserve the estate's right to retain any value in the equipment beyond the value of the exempt interest. Pp. 6–23.

(a) Reilly's complicated view of the trustee's statutory obligation, and her reading of Schedule C, does not accord with the Code. Pp. 6–15.

(1) The parties agree that this case is governed by §522(*l*), which states that a Chapter 7 debtor must "file a list of property that the debtor claims as exempt under subsection (b) of this section," and that "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." Reilly asserts that the "property claimed as exempt" refers to all of the information on Schedule C, including the estimated market value of each asset. Schwab and *amicus* United States counter that because the Code defines such property as an interest, not to exceed a certain dollar amount, in a particular asset, *not* as the asset itself, the value of the property claimed exempt should be judged on the dollar value the debtor assigns the interest, *not* on the value the debtor assigns the asset. Pp. 6–9.

(2) Schwab and the United States are correct. The portion of §522(*l*) that resolves this case is not, as Reilly asserts, the provision stating that the "property claimed as exempt on [Schedule C] is exempt" unless an interested party objects. Rather, it is the portion that defines the objection's target, namely, the "list of property that

the debtor claims as exempt under subsection (b)." Section 522(b) does *not* define the "property claimed as exempt" by reference to the estimated market value. It refers only to property defined in §522(d), which in turn lists 12 categories of property that a debtor may claim as exempt. Most of these categories and all the ones applicable here define "property" as the debtor's "interest"—up to a specified dollar amount—in the assets described in the category, *not* as the assets themselves. Schwab had no duty to object to the property Reilly claimed as exempt because its stated value was within the limits the Code allows. Reilly's contrary view does not withstand scrutiny because it defines the target of a trustee's objection based on Schedule C's language and dictionary definitions of "property" at odds with the Code's definition. The Third Circuit failed to account for the Code's definition and for provisions that permit debtors to exempt certain property in kind or in full regardless of value. See, *e.g.*, §522(d)(9). Schwab was entitled to evaluate the claimed exemptions' propriety based on three Schedule C entries: the description of the business equipment in which Reilly claimed the exempt interests; the Code provisions governing the claimed exemptions; and the amounts Reilly listed in the column titled "value of claimed exemption." This conclusion does not render Reilly's market value estimate superfluous. It simply confines that estimate to its proper role: aiding the trustee in administering the estate by helping him identify assets that may have value beyond the amount the debtor claims as exempt, or whose full value may not be available for exemption. This interpretation is consistent with the historical treatment of bankruptcy exemptions. Pp. 9–15.

(b) *Taylor* does not dictate a contrary conclusion. While both *Taylor* and this case concern the consequences of a trustee's failure to object to a claimed exemption within Rule 4003's time period, *Taylor* establishes and applies the straightforward proposition that an interested party must object to a claimed exemption if the amount the debtor lists as the "value claimed exempt" is not within statutory limits. In *Taylor,* the value listed in Schedule C ("$ unknown") was not plainly within those limits, but here, the values ($8,868 and $1,850) are within Code limits and thus do not raise the warning flag present in *Taylor*. Departing from *Taylor* would not only ignore the presumption that parties act lawfully and with knowledge of the law; it would also require the Court to expand the statutory definition of "property claimed as exempt" and the universe of information an interested party must consider in evaluating an exemption's validity. Even if the Code allowed such expansions, they would be ill advised. Basing the definition of "property claimed exempt," and thus an interested party's obligation to object under §522(*l*), on inferences that

party must draw from preprinted bankruptcy schedules that evolve over time, rather than on the facial validity of the value the debtor assigns the "property claimed as exempt" as defined by the Code, would undermine the predictability the statute is designed to provide. Pp. 16–18.

(c) Reilly's argument threatens to convert the Code's goal of giving debtors a fresh start into a free pass. By permitting a debtor "to withdraw from the estate certain interests in property, . . . up to certain values," *Rousey* v. *Jacoway*, 544 U. S. 320, 325, Congress balanced the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on creditors. This Court should not alter that balance by requiring trustees to object to claimed exemptions based on form entries beyond those governing an exemption's validity under the Code. In rejecting Reilly's approach, the Court does not create incentives for trustees and creditors to sleep on their rights. The decision reached here encourages a debtor wishing to exempt an asset's full market value or the asset itself to declare the value of the claimed exemption in a way that makes its scope clear. Such declarations will encourage the trustee to object promptly and preserve for the estate any value in the asset beyond relevant statutory limits. If the trustee fails to object, or his objection is overruled, the debtor will be entitled to exclude the asset's full value. If the objection is sustained, the debtor will be required either to forfeit the portion of the exemption exceeding the statutory allowance or to revise other exemptions or arrangements with creditors to permit the exemption. See Rule 1009(a). Either result will facilitate the expeditious and final disposition of assets, and thus enable the debtor and creditors to achieve a fresh start free of Reilly's finality and clouded-title concerns. Pp. 19–22.

534 F. 3d 173, reversed and remanded.

THOMAS, J., delivered the opinion of the Court, in which STEVENS, SCALIA, KENNEDY, ALITO, and SOTOMAYOR, JJ., joined. GINSBURG, J., filed a dissenting opinion, in which ROBERTS, C. J., and BREYER, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–538

WILLIAM G. SCHWAB, PETITIONER *v.* NADEJDA
REILLY

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[June 17, 2010]

JUSTICE THOMAS delivered the opinion of the Court.

When a debtor files a Chapter 7 bankruptcy petition, all
of the debtor's assets become property of the bankruptcy
estate, see 11 U. S. C. §541, subject to the debtor's right to
reclaim certain property as "exempt," §522(*l*).  The Bank-
ruptcy Code specifies the types of property debtors may
exempt, §522(b), as well as the maximum value of the
exemptions a debtor may claim in certain assets, §522(d).
Property a debtor claims as exempt will be excluded from
the bankruptcy estate "[u]nless a party in interest" ob-
jects.  §522(*l*).

This case presents an opportunity for us to resolve a
disagreement among the Courts of Appeals about what
constitutes a claim of exemption to which an interested
party must object under §522(*l*).  The issue is whether an
interested party must object to a claimed exemption
where, as here, the Code defines the property the debtor is
authorized to exempt as an interest, the value of which
may not exceed a certain dollar amount, in a particular
type of asset, and the debtor's schedule of exempt property
accurately describes the asset and declares the "value of

[the] claimed exemption" in that asset to be an amount within the limits that the Code prescribes. Fed. Rule Bkrtcy. Proc. Official Form 6, Schedule C (1991) (hereinafter Schedule C). We hold that, in cases such as this, an interested party need not object to an exemption claimed in this manner in order to preserve the estate's ability to recover value in the asset beyond the dollar value the debtor expressly declared exempt.

I

Respondent Nadejda Reilly filed for Chapter 7 bankruptcy when her catering business failed. She supported her petition with various schedules and statements, two of which are relevant here: Schedule B, on which the Bankruptcy Rules require debtors to list their assets (most of which become property of the estate), and Schedule C, on which the Rules require debtors to list the property they wish to reclaim as exempt. The assets Reilly listed on Schedule B included an itemized list of cooking and other kitchen equipment that she described as "business equipment," and to which she assigned an estimated market value of $10,718. App. 40a, 49a–55a.

On Schedule C, Reilly claimed two exempt interests in this equipment pursuant to different sections of the Code. Reilly claimed a "tool[s] of the trade" exemption of $1,850 in the equipment under §522(d)(6), which permits a debtor to exempt his "aggregate interest, not to exceed $1,850 in value, in any implements, professional books, or tools, of [his] trade." See also 69 Fed. Reg. 8482 (2004) (Table). And she claimed a miscellaneous exemption of $8,868 in the equipment under §522(d)(5), which, at the time she filed for bankruptcy, permitted a debtor to take a "wildcard" exemption equal to the "debtor's aggregate interest in any property, not to exceed" $10,225 "in value."[1] See

_____

[1] The 1994 version of 11 U. S. C. §522(d)(5) allowed debtors to exempt

App. 58a. The total value of these claimed exemptions ($10,718) equaled the value Reilly separately listed on Schedules B and C as the equipment's estimated market value, see *id.*, at 49a, 58a.

Subject to exceptions not relevant here, the Federal Rules of Bankruptcy Procedure require interested parties to object to a debtor's claimed exemptions within 30 days after the conclusion of the creditors' meeting held pursuant to Rule 2003(a). See Fed. Rule Bkrtcy. Proc. 4003(b). If an interested party fails to object within the time allowed, a claimed exemption will exclude the subject property from the estate even if the exemption's value exceeds what the Code permits. See, *e.g.*, §522(*l*); *Taylor* v. *Freeland & Kronz*, 503 U. S. 638, 642–643 (1992).

Petitioner William G. Schwab, the trustee of Reilly's bankruptcy estate, did not object to Reilly's claimed exemptions in her business equipment because the dollar value Reilly assigned each exemption fell within the limits that §§522(d)(5) and (6) prescribe. App. 163a. But because an appraisal revealed that the total market value of Reilly's business equipment could be as much as $17,200,[2] Schwab moved the Bankruptcy Court for permission to auction the equipment so Reilly could receive the $10,718 she claimed as exempt, and the estate could distribute the equipment's remaining value (approximately $6,500) to Reilly's creditors. App. 141a–143a.

—————

an "aggregate interest in any property, not to exceed in value $800 plus up to $7,500 of any unused amount of the [homestead or burial plot] exemption provided under [§522(d)(1)]." In 2004, pursuant to §104(b)(2), the Judicial Conference of the United States published notice that §522(d)(5) would impose the $975 and $9,250 ($10,225 total) limits that governed Reilly's April 2005 petition. See 69 Fed. Reg. 8482 (Table). In 2007 and 2010 the limits were again increased. See 72 *id.*, at 7082 (Table); 75 *id.*, at 8748 (Table).

[2] Schwab concedes that the appraisal occurred before Rule 4003(b)'s 30-day window for objecting to the claimed exemptions had passed. See Brief for Petitioner 15.

Reilly opposed Schwab's motion. She argued that by equating on Schedule C the total value of the exemptions she claimed in the equipment with the equipment's estimated market value, she had put Schwab and her creditors on notice that she intended to exempt the equipment's full value, even if that amount turned out to be more than the dollar amount she declared, and more than the Code allowed. *Id*., at 165a. Citing §522(*l*), Reilly asserted that because her Schedule C notified Schwab of her intent to exempt the full value of her business equipment, he was obliged to object if he wished to preserve the estate's right to retain any value in the equipment in excess of the $10,718 she estimated. Because Schwab did not object within the time prescribed by Rule 4003(b), Reilly asserted that the estate forfeited its claim to such value. *Id*., at 165a. Reilly further informed the Bankruptcy Court that exempting her business equipment from the estate was so important to her that she would dismiss her bankruptcy case if doing so was the only way to avoid the equipment's sale at auction.[3]

The Bankruptcy Court denied both Schwab's motion to auction the equipment and Reilly's conditional motion to dismiss her case. See *In re Reilly*, 403 B. R. 336 (Bkrtcy. Ct. MD Pa. 2006). Schwab sought relief from the District Court, arguing that neither the Code nor Rule 4003(b) requires a trustee to object to a claimed exemption where the amount the debtor declares as the "value of [the

––––––––––

[3] Reilly's desire to avoid the equipment's auction is understandable because the equipment, which Reilly's parents purchased for her despite their own financial difficulties, has "'extraordinary sentimental value.'" Brief for Respondent 5 (quoting App. 152a–153a). But the sentimental value of the property cannot drive our decision in this case, because sentimental value is not a basis for construing the Bankruptcy Code. Because the Code imposes limits on exemptions, many debtors who seek to take advantage of the Code are, no doubt, put to the similarly difficult choice of parting with property of "extraordinary sentimental value." *Id*., at 152a−153a; see *infra*, at 19–23.

debtor's] claimed exemption" in certain property is an amount within the limits the Code prescribes. The District Court rejected Schwab's argument, and the Court of Appeals affirmed. See *In re Reilly*, 534 F. 3d 173 (CA3 2008).

The Court of Appeals agreed with the Bankruptcy Court that by equating on Schedule C the total value of her exemptions in her business equipment with the equipment's market value, Reilly "indicate[d] the intent" to exempt the equipment's full value. *Id.*, at 174. In reaching this conclusion, the Court of Appeals relied on our decision in *Taylor:*

> "[W]e believe this case to be controlled by *Taylor*. Just as we perceive it was important to the *Taylor* Court that the debtor meant to exempt the full amount of the property by listing 'unknown' as both the value of the property and the value of the exemption, it is important to us that Reilly valued the business equipment at $10,718 and claimed an exemption in the same amount. Such an identical listing put Schwab on notice that Reilly intended to exempt the property fully.
>
> .     .     .     .     .
>
> "'[A]n unstated premise' of *Taylor* was 'that a debtor who exempts the entire reported value of an asset is claiming the "full amount," whatever it turns out to be.'" 534 F. 3d, at 178–179.

Relying on this "unstated premise," the Court of Appeals held that Schwab's failure to object to Reilly's claimed exemptions entitled Reilly to the equivalent of an in-kind interest in her business equipment, even though the value of that exemption exceeded the amount that Reilly declared on Schedule C and the amount that the Code allowed her to withdraw from the bankruptcy estate. *Ibid.*

As noted, the Court of Appeals' decision adds to dis-

agreement among the Circuits about what constitutes a claim of exemption to which an interested party must object under §522(*l*).[4] We granted certiorari to resolve this conflict. See 556 U. S. ___ (2009). We conclude that the Court of Appeals' approach fails to account for the text of the relevant Code provisions and misinterprets our decision in *Taylor*. Accordingly, we reverse.

## II

The starting point for our analysis is the proper interpretation of Reilly's Schedule C. If we read the Schedule Reilly's way, she claimed exemptions in her business equipment that could exceed statutory limits, and thus claimed exemptions to which Schwab should have objected if he wished to enforce those limits for the benefit of the estate. If we read Schedule C Schwab's way, Reilly claimed valid exemptions to which Schwab had no duty to object. The Court of Appeals construed Schedule C Reilly's way and interpreted her claimed exemptions as improper, and therefore objectionable, even though their declared value was facially within the applicable Code limits. In so doing, the Court of Appeals held that trustees evaluating the validity of exemptions in cases like this cannot take a debtor's claim at face value, and specifically

---

[4] Compare *In re Williams*, 104 F. 3d 688, 690 (CA4 1997) (holding that interested parties have no duty to object to a claimed exemption where the dollar amount the debtor assigns the exemption is facially within the range the Code allows for the type of property in issue); *In re Wick*, 276 F. 3d 412 (CA8 2002) (employing reasoning similar to *Williams*, but stopping short of articulating a clear rule), with *In re Green*, 31 F. 3d 1098, 1100 (CA11 1994) ("A debtor who exempts the entire reported value of an asset is claiming the [asset's] 'full amount,' whatever it turns out to be"); *In re Anderson*, 377 B. R. 865 (Bkrtcy. App. Panel CA6 2007) (similar); and *In re Barroso-Herrans*, 524 F. 3d 341, 344 (CA1 2008) (focusing on "how a reasonable trustee would have understood the filings under the circumstances"); *In re Hyman*, 967 F. 2d 1316 (CA9 1992) (applying an analogous totality-of-the-circumstances approach).

cannot rely on the fact that the amount the debtor declares as the "value of [the] claimed exemption" is within statutory limits. Instead, the trustee's duty to object turns on whether the interplay of various schedule entries supports an inference that the debtor "intended" to exempt a dollar value different than the one she wrote on the form. 534 F. 3d, at 178. This complicated view of the trustee's statutory obligation, and the strained reading of Schedule C on which it rests, is inconsistent with the Code.[5]

The parties agree that this case is governed by §522(*l*), which states that a Chapter 7 debtor must "file a list of property that the debtor claims as exempt under subsection (b) of this section," and further states that "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." The parties further agree that the "list" to which §522(*l*) refers is the "list of property . . . claim[ed] as exempt" currently known as "Schedule C." See Schedule C.[6] The parties, like the Courts of Appeals, disagree about what information on Schedule C defines the "property claimed as exempt" for purposes of evaluating an exemption's propriety under §522(*l*). Reilly asserts that the "property claimed as exempt" is defined by reference to all the information on Schedule C, including the estimated market value of each asset in which the debtor claims an exempt interest. Schwab and the United States as *amicus curiae* argue that the Code specifically defines the "property claimed as exempt" as an interest, the value of which may not exceed a certain dollar amount, in a particular asset, *not* as the asset itself. Accordingly, they

---

[5] The forms, rules, treatise excerpts, and policy considerations on which the dissent relies, see *post*, at 4−16, must be read in light of the Bankruptcy Code provisions that govern this case, and must yield to those provisions in the event of conflict.

[6] Bankruptcy Rule 4003 specifies the time within which the debtor must file Schedule C, as well as the time within which interested parties must object to the exemptions claimed thereon.

argue that the value of the property claimed exempt, *i.e.*,
the value of the debtor's exempt interest in the asset,
should be judged on the value the debtor assigns the
interest, *not* on the value the debtor assigns the asset.
The point of disagreement is best illustrated by the rele-
vant portion of Reilly's Schedule C:

Schedule C─Property Claimed as Exempt

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Market Value of Property Without Deducting Exemptions |
|---|---|---|---|
| Schedule B Personal Property | | | |
| . . . . | . . . . | . . . . | . . . . |
| See attached list of business equipment. | 11 U. S. C. §522(d)(6) 11 U. S. C. §522(d)(5) | 1,850  8,868 | 10,718 |

According to Reilly, Schwab was required to treat the
estimate of market value she entered in column four as
part of her claimed exemption in identifying the "property
claimed as exempt" under §522(*l*). See Brief for Respon-
dent 22–28. Relying on this premise, Reilly argues that
where, as here, a debtor equates the total value of her
claimed exemptions in a certain asset (column three) with
her estimate of the asset's market value (column four), she
establishes the "property claimed as exempt" as the full
value of the asset, whatever that turns out to be. See *ibid.*
Accordingly, Reilly argues that her Schedule C clearly put
Schwab on notice that she "intended" to claim an exemp-
tion for the full value of her business equipment, and that
Schwab's failure to oppose the exemption in a timely
manner placed the full value of the equipment outside the
estate's reach.

Schwab does not dispute that columns three and four
apprised him that Reilly equated the total value of her
claimed exemptions in the equipment ($1,850 plus $8,868)

with the equipment's market value ($10,718). He simply
disagrees with Reilly that this "identical listing put [him]
on notice that Reilly intended to exempt the property
fully," regardless whether its value exceeded the exemp-
tion limits the Code prescribes. 534 F. 3d, at 178. Schwab
and *amicus* United States instead contend that the Code
defines the "property" Reilly claimed as exempt under
§522(*l*) as an "interest" whose value cannot exceed a cer-
tain dollar amount. Brief for Petitioner 20–26; Reply Brief
for Petitioner 3–6; Brief for United States as *Amicus
Curiae* 12–18. Construing Reilly's Schedule C in light of
this statutory definition, they contend that Reilly's
claimed exemption was facially unobjectionable because
the "property claimed as exempt" (*i.e.*, two interests in her
business equipment worth $8,868 and $1,850, respec-
tively) is property Reilly was clearly entitled to exclude
from her estate under the Code provisions she referenced
in column 2. See *supra*, at 8 (citing §§522(d)(5) and (6)).
Accordingly, Schwab and the United States conclude that
Schwab had no obligation to object to the exemption in
order to preserve for the estate any value in Reilly's busi-
ness equipment beyond the total amount ($10,718) Reilly
properly claimed as exempt.

We agree. The portion of §522(*l*) that resolves this case
is not, as Reilly asserts, the provision stating that the
"property claimed as exempt on [Schedule C] is exempt"
unless an interested party objects. Rather, it is the por-
tion of §522(*l*) that defines the target of the objection,
namely, the portion that says Schwab has a duty to object
to the "list of property that the debtor claims as exempt
*under subsection (b)*." (Emphasis added.) That subsec-
tion, §522(b), does *not* define the "property claimed as
exempt" by reference to the estimated market value on
which Reilly and the Court of Appeals rely. Brief for
Respondent 22–23; 534 F. 3d, at 178. Section 522(b)
refers only to property defined in §522(d), which in turn

lists 12 categories of property that a debtor may claim as exempt. As we have recognized, most of these categories (and all of the categories applicable to Reilly's exemptions) define the "property" a debtor may "clai[m] as exempt" as the debtor's "interest"—up to a specified dollar amount— in the assets described in the category, *not* as the assets themselves. §§522(d)(5)–(6); see also §§522(d)(1)–(4), (8); *Rousey* v. *Jacoway*, 544 U. S. 320, 325 (2005); *Owen* v. *Owen*, 500 U. S. 305, 310 (1991). Viewing Reilly's form entries in light of this definition, we agree with Schwab and the United States that Schwab had no duty to object to the property Reilly claimed as exempt (two interests in her business equipment worth $1,850 and $8,868) because the stated value of each interest, and thus of the "property claimed as exempt," was within the limits the Code allows.[7]

Reilly's contrary view of Schwab's obligations under §522(*l*) does not withstand scrutiny because it defines the target of a trustee's objection—the "property claimed as exempt"—based on language in Schedule C and dictionary definitions of "property," see Brief for Respondent 24–25, 40–41, that the definition in the Code itself overrides.[8]

_____

[7] Schwab's statutory duty to object to the exemptions in this case turns solely on whether the value of the property claimed as exempt exceeds statutory limits because the parties agree that Schwab had no cause to object to Reilly's attempt to claim exemptions in the equipment at issue, or to the applicability of the Code provisions Reilly cited in support of her exemptions.

[8] The dissent's approach suffers from a similar flaw, and misstates our holding in critiquing it. See *post*, at 1−2 (asserting that by refusing to subject "challenges to the debtor's valuation of exemptible assets" to the "30-day" objection period in Federal Rule of Bankruptcy Procedure 4003(b), we "drastically reduc[e] Rule 4003's governance"). Challenges to the valuation of what the dissent terms "exemptible assets" are not covered by Rule 4003(b) in the first place. *Post*, at 1. Challenges to "property claimed as exempt" as defined by the Code are covered by Rule 4003(b), but in this case that property is not objectionable, so the lack of an objection did not violate the Rule. Our holding is confined to

Although we may look to dictionaries and the Bankruptcy Rules to determine the meaning of words the Code does not define, see, *e.g.*, *Rousey*, *supra*, at 330, the Code's definition of the "property claimed as exempt" in this case is clear. As noted above, §§522(d)(5) and (6) define the "property claimed as exempt" as an "interest" in Reilly's business equipment, *not* as the equipment *per se*. Sections 522(d)(5) and (6) further and plainly state that claims to exempt such interests are statutorily permissible, and thus unobjectionable, if the value of the claimed interest is below a particular dollar amount.[9] That is the case here, and Schwab was entitled to rely upon these provisions in evaluating whether Reilly's exemptions were objectionable under the Code. See *Lamie* v. *United States Trustee*, 540 U. S. 526, 534 (2004); *Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.*, 530 U. S. 1, 6 (2000). The Court of Appeals' contrary holding not only fails to account for the Code's definition of the "property claimed as exempt." It also fails to account for the provisions in §522(d) that permit debtors to exempt certain property in kind or in full regardless of value. See, *e.g.*, §§522(d)(9) (professionally prescribed health aids), (10)(C) (disability benefits), (7) (unmatured life insurance contracts). We decline to construe Reilly's claimed exemptions in a manner that

———————

this point. Accordingly, our holding does not "reduc[e] Rule 4003's governance," nor does it express any judgment on what constrains objections to the type of "market value" estimates, *post*, at 1, the dissent equates with the dollar value a debtor assigns the "property claimed as exempt" as defined by the Code, see, *e.g.*, *post*, at 2, 6.

[9] Treating such claims as unobjectionable is consistent with our precedents. See, *e.g.*, *Rousey*, 544 U. S., at 325. It also accords with bankruptcy court decisions holding that where, as here, a debtor claims an exemption pursuant to provisions that (like §522(d)(6)) permit the debtor to exclude from the estate only an "interest" in certain property, the "property" that becomes exempt absent objection, §522(*l*), is only the "partial interest" claimed as exempt and not "the asset as a whole," *e.g.*, *In re Soost*, 262 B. R. 68, 72 (Bkrtcy. App. Panel CA8 2001).

elides the distinction between these provisions and provi-
sions such as §§522(d)(5) and (6), see, *e.g.*, *Duncan* v.
*Walker*, 533 U. S. 167, 174 (2001), particularly based upon
an entry on Schedule C—Reilly's estimate of her equip-
ment's market value—to which the Code does not refer in
defining the "property claimed as exempt."[10]

For all of these reasons, we conclude that Schwab was
entitled to evaluate the propriety of the claimed exemp-
tions based on three, and only three, entries on Reilly's
Schedule C: the description of the business equipment in
which Reilly claimed the exempt interests; the Code provi-

_____

[10]The dissent's approach does not avoid these concerns. The dissent
insists that "a debtor's market valuation [of the equipment in which she
claims an exempt interest] is an essential factor in determining the
nature of the 'interest' [the] debtor lists as exempt" (and thus in deter-
mining whether the claimed exemption is objectionable), because
"without comparing [the debtor's] market valuation of the equipment to
the value of her claimed exemption" the trustee "could not comprehend
whether [the debtor] claimed a monetary or an in-kind 'interest' in [the]
equipment." *Post*, at 9, n. 9. This argument overlooks the fact that
there is another way the trustee could discern from the "face of the
debtor's filings," *post*, at 7, n. 6, whether the debtor claimed as exempt
a "monetary or an in-kind 'interest' in" her equipment, *post*, at 9, n. 9:
The trustee could simply consult the Code provisions the debtor listed
as governing the exemption in question. Here, those provisions,
§§522(d)(5) and (d)(6), expressly describe the exempt interest as an
"interest" "not to exceed" a specified dollar amount. Accordingly, it was
entirely appropriate for Schwab to view Reilly's schedule entries as
exempting an interest in her business equipment in the (declared and
unobjectionable) amounts of $1,850 and $8,868. Viewing the entries
otherwise, *i.e.*, as exempting the equipment in kind or in full no matter
what its dollar value, would unnecessarily treat the exemption as
violating the limits imposed by the Code provisions that govern it, as
well as ignore the distinction between those provisions and the provi-
sions that "authoriz[e] reclamation of the property in full without any
cap on value," *post*, at 7, n. 5. And it would do all of this based on
information (identical dollar amounts in columns three and four of
Schedule C) that Schwab and one of his *amici* say often result from a
default setting in commercial bankruptcy software. See Reply Brief for
Petitioner 15; Brief for Nat. Assn. of Bankruptcy Trustees 13, n. 15.

sions governing the claimed exemptions; and the amounts Reilly listed in the column titled "value of claimed exemption." In reaching this conclusion, we do not render the market value estimate on Reilly's Schedule C superfluous. We simply confine the estimate to its proper role: aiding the trustee in administering the estate by helping him identify assets that may have value beyond the dollar amount the debtor claims as exempt, or whose full value may not be available for exemption because a portion of the interest is, for example, encumbered by an unavoidable lien. See, *e.g.,* 3 W. Norton, Bankruptcy Law and Practice §56:7 (3d ed. 2009); Brief for United States as *Amicus Curiae* 16; Dept. of Justice, Executive Office for U. S. Trustees, Handbook for Chapter 7 Trustees, p. 8–1 (2005), http://www.justice.gov/ust/eo/private_trustee/library/chapter07/docs/7handbook1008/Ch7_Handbook.pdf (as visited June 14, 2010, and available in Clerk of Court's case file). As noted, most assets become property of the estate upon commencement of a bankruptcy case, see 11 U. S. C. §541, and exemptions represent the debtor's attempt to reclaim those assets or, more often, certain interests in those assets, to the creditors' detriment. Accordingly, it is at least useful for a trustee to be able to compare the value of the claimed exemption (which typically represents the debtor's interest in a particular asset) with the asset's estimated market value (which belongs to the estate subject to any valid exemption) without having to consult separate schedules.[11]

_____

[11] The dissent's argument that the estimate plays a greater role, and is "vital," *post*, at 8, to determining whether the value a debtor assigns the "property claimed as exempt" (here, an interest in certain business equipment) is objectionable, see *post*, at 8−9, lacks statutory support because the governing Code provisions phrase the exemption limit as a simple dollar amount. The dissent's view, see *post*, at 7−9, might be plausible if the Code stated that the debtor could exempt an interest in her equipment "not to exceed" a certain *percentage* of the equipment's

Our interpretation of Schwab's statutory obligations is not only consistent with the governing Code provisions; it is also consistent with the historical treatment of bankruptcy exemptions. Congress has permitted debtors to exempt certain property from their bankruptcy estates for more than two centuries. See Act of Apr. 4, 1800, ch. 19, §5, 2 Stat. 23.[12] Throughout these periods, debtors have validly exempted property based on forms that required the debtor to list the value of a claimed exemption without also estimating the market value of the asset in which the

_____

market value, because then it might be necessary to "compar[e] [the debtor's] market valuation of the equipment to the value of her claimed exemption" to determine the exemption's propriety. *Post,* at 9, n. 9. But the Code does not phrase the exemption cap in such terms. Moreover, even accepting that the equivalent Schedule C entries the dissent relies upon represent a claim to exempt an asset's full value, the dissent does not explain why this equivalence precludes a trustee from relying on the dollar amount the debtor expressly assigns both entries. According to the dissent, a trustee faced with such entries should assume not only that the debtor reclaims from the estate what she believes to be the full value of an asset in which the Code allows her to exempt an interest "not to exceed" a certain dollar amount, *e.g.,* §522(d)(6), but *also* that the debtor would continue to claim the asset's full value as exempt even if that value exceeds her estimate to a point that would cause her claim to violate the Code. The schedule entries themselves do not compel this assumption, and the Code provisions they invoke undercut it. The evidence that the debtor in this case would have chosen that course is external to her exemption schedule. See, *e.g., supra,* at 4 (citing statements in Reilly's motion to dismiss); *post,* at 4, n. 3, 6 (same). And in the ordinary case, particularly if the equivalent entries the dissent relies upon result from a software default, see n. 10, *supra,* there is no reason to assume that a debtor would want to violate the Code or jeopardize other exemptions if her market value estimate turns out to be wrong.

[12] See also Act of Aug. 19, 1841, ch. 9, §3, 5 Stat. 442; Act of Mar. 2, 1867, ch. 176, §11, 14 Stat. 521, amended by Act of June 22, 1874, 18 Stat., Pt. 3, p. 182; Bankruptcy Act of July 1, 1898, ch. 541, §6, 30 Stat. 548, 11 U. S. C. §24 (1926 ed.); Chandler Act, ch. 575, §1, 52 Stat. 847, 11 U. S. C. §24 (1934 ed., Supp. IV); §522 (1976 ed., Supp. II); §522 (2000 ed. and Supp. V).

debtor claimed the exempt interest. See Brief for Respondent 46, n. 7 (citing Sup. Ct. Bkrtcy. Form 20 (1877)).[13] Indeed, it was not until 1991 that Schedule B–4 was redesignated as Schedule C and amended to require the estimate of market value on which Reilly so heavily relies. See Schedule C. This amendment was not occasioned by legislative changes that altered the Code's definition of "the property claimed as exempt" in this case as an "interest," not to exceed a certain dollar amount, in Reilly's business equipment.[14] Accordingly, we agree with Schwab and the United States that this recent amendment to the exemption form does not compel Reilly's view of Schwab's statutory obligations, or render the claimed exemptions in this case objectionable under the Code. See Reply Brief for Petitioner 9–11; Brief for United States as *Amicus Curiae* 16–17.[15]

————————

[13] See also General Forms in Bankruptcy, Official Form 1, Schedule B. (5) (1898); Fed. Rule Bkrtcy. Proc. Official Form 6, Schedule B–4 (1971).

[14] The precise reason for the amendment is unclear. See Communication from THE CHIEF JUSTICE of the United States Transmitting Amendments to the Federal Rules of Bankruptcy Procedure Prescribed by the Court, Pursuant to 28 U. S. C. 2075, H. R. Doc. 102–80, p. 558, reprinted in 11 Bankruptcy Rules Documentary History (1990–1991) (referencing only the fact of the amendment). It may have been to consolidate and reconcile the separate forms debtors were previously required to file in Chapter 7 and Chapter 13 cases, see, *e.g., In re Beshirs*, 236 B. R. 42, 46−47 (Bkrtcy. Ct. Kan. 1999), or simply to make it easier for trustees to evaluate whether certain assets were viable candidates for liquidation. Whatever the case, it did not result from statutory changes to the Code provisions that govern this dispute.

[15] Because the Code provisions we rely upon to resolve this case do not obligate trustees to object under Rule 4003(b) to a debtor's estimate of the market value of an asset in which the debtor claims an exempt interest, our analysis does not depend on whether the schedule of "property claimed as exempt" (currently Schedule C) calls for such an estimate or not. We engage the point only because Reilly suggests that the 1991 schedule revisions requiring debtors to provide such an estimate on the schedule of "property claimed as exempt" means that

### III

The Court of Appeals erred in holding that our decision in *Taylor* dictates a contrary conclusion. See 534 F. 3d, at 178. *Taylor* does not rest on what the debtor "meant" to exempt. 534 F. 3d, at 178. Rather, *Taylor* applies to the face of a debtor's claimed exemption the Code provisions that compel reversal here.

The debtor in *Taylor*, like the debtor here, filed a schedule of exemptions with the Bankruptcy Court on which the debtor described the property subject to the claimed exemption, identified the Code provision supporting the exemption, and listed the dollar value of the exemption. Critically, however, the debtor in *Taylor* did *not*, like the debtor here, state the value of the claimed exemption as a specific dollar amount at or below the limits the Code allows. Instead, the debtor in *Taylor* listed the value of the exemption itself as "$ *unknown*":

Schedule B-4. –Property Claimed Exempt

| Type of Property | Location, Description, and, So Far As Relevant to the Claim of Exemption, Present Use of Property | Specify the Statute Creating the Exemption | Value Claimed Exempt |
|---|---|---|---|
| Proceeds from lawsuit | Winn v. TWA Claim for lost wages | 11 U. S. C. 522(b)(d) | $ *unknown* |

The interested parties in *Taylor* agreed that this entry

---

the estimate must be viewed as part of the exemption and is therefore subject to the Rule. See Brief for Respondent 40−41. The dissent ranges far beyond even this unavailing argument in suggesting that the market value estimate served as "an essential factor in determining the nature of the 'interest' a debtor lists as exempt," *post*, at 9, n. 9, even before 1991 when that estimate did *not* appear on the schedule of "property claimed as exempt" (former Schedule B−4), but rather appeared on former "Schedule B–2," *post*, at 7, n. 6, which merely listed the debtor's "personal property" as of the date of the petition filing. Interim Fed. Rule Bkrtcy. Proc. Official Form 6, Schedules B–2, B–4 (1979).

rendered the debtor's claimed exemption objectionable on its face because the exemption concerned an asset (lawsuit proceeds) that the Code did not permit the debtor to exempt beyond a specific dollar amount. See 503 U. S., at 642. Accordingly, although this case and *Taylor* both concern the consequences of a trustee's failure to object to a claimed exemption within the time specified by Rule 4003, the question arose in *Taylor* on starkly different facts. In *Taylor*, the question concerned a trustee's obligation to object to the debtor's entry of a "value claimed exempt" that was *not* plainly within the limits the Code allows. In this case, the opposite is true. The amounts Reilly listed in the Schedule C column titled "Value of Claimed Exemption" *are* facially within the limits the Code prescribes and raise no warning flags that warranted an objection.[16] See *supra,* at 8.

*Taylor* supports this conclusion. In holding otherwise, the Court of Appeals focused on what it described as *Taylor*'s "'unstated premise'" that "'a debtor who exempts the entire reported value of an asset is claiming the "full amount," whatever it turns out to be.'" 534 F. 3d, at 179. But *Taylor* does not rest on this premise. It establishes and applies the straightforward proposition that an interested party must object to a claimed exemption if the

_____

[16] See, *e.g.*, *Barroso-Herrans*, 524 F. 3d, at 345 (explaining that Schedule C entries listing the value of a claimed exemption as "unknown," "to be determined," or "100%" are "'red flags to trustees and creditors,' and therefore put them on notice that if they do not object, the whole value of the asset—whatever it might later turn out to be—will be exempt" (quoting 1 Collier on Bankruptcy ¶8.06[1][c][ii] (15th ed. rev. 2007); citation and some internal quotation marks omitted)). The dissent concedes that a debtor's exemption schedule "must give notice sufficient to cue the trustee that an objection may be in order," and rightly observes that the sufficiency of a particular cue, or "'warning flag,'" may lie "in the eye of the beholder." *Post*, at 14. In this case, however, the Code itself breaks the tie between what might otherwise be two equally tenable views.

amount the debtor lists as the "value claimed exempt" is
not within statutory limits, a test the value ($ *unknown*)
in *Taylor* failed, and the values ($8,868 and $1,850) in this
case pass.

We adhere to this test.  Doing otherwise would not only
depart from *Taylor* and ignore the presumption that par-
ties act lawfully and with knowledge of the law, cf. *United
States* v. *Budd*, 144 U. S. 154, 163 (1892); it would also
require us to expand the statutory definition of "property
claimed as exempt" and the universe of information an
interested party must consider in evaluating the validity
of a claimed exemption.  Even if the Code allowed such
expansions, they would be ill advised.  As evidenced by the
differences between Reilly's Schedule C and the schedule
in *Taylor*, preprinted bankruptcy schedules change over
time.  Basing the definition of the "property claimed as
exempt," and thus an interested party's obligation to
object under §522(*l*), on inferences that party must draw
from evolving forms, rather than on the facial validity of
the value the debtor assigns the "property claimed as
exempt" as defined by the Code, would undermine the
predictability the statute is designed to provide.[17]  For all
of these reasons, we take Reilly's exemptions at face value
and find them unobjectionable under the Code, so the

––––––––––

[17] Reilly insists that our conclusion should nonetheless be avoided
because "procedures that burden the debtor's exemption entitlements,
like those that impair a debtor's discharge generally, are to be con-
strued narrowly."  Brief for Respondent 33 (citing *Kawaauhau* v.
*Geiger*, 523 U. S. 57, 62 (1998)).  This argument misses the mark for
two reasons.  First, the only burdens our conclusion imposes are bur-
dens the Code itself prescribes, specifically, the burdens the Code
places on debtors to state their claimed exemptions accurately and to
conform such claims to statutory limits.  Second, and in any event,
*Geiger* and the other cases Reilly cites emphasize in the discharge
context the importance of limiting exceptions to discharge to "those
plainly expressed," a principle that supports our approach here.  *Ibid.*
(internal quotation marks omitted).

objection deadline we enforced in *Taylor* is inapplicable here.

## IV

In a final effort to defend the Court of Appeals' judgment, Reilly asserts that her approach to §522(*l*) is necessary to vindicate the Code's goal of giving debtors a fresh start, and to further its policy of discouraging trustees and creditors from sleeping on their rights. See Brief for Respondent 21, 55–68. Although none of Reilly's policy arguments can overcome the Code provisions or the aspects of *Taylor* that govern this case, our decision fully accords with all of the policies she identifies. We agree that "exemptions in bankruptcy cases are part and parcel of the fundamental bankruptcy concept of a 'fresh start.'" Brief for Respondent 21 (quoting *Rousey*, 544 U. S., at 325); see *Marrama* v. *Citizens Bank of Mass.*, 549 U. S. 365, 367 (2007). We disagree that this policy required Schwab to object to a facially valid claim of exemption on pain of forfeiting his ability to preserve for the estate any value in Reilly's business equipment beyond the value of the interest she declared exempt. This approach threatens to convert a fresh start into a free pass.

As we emphasized in *Rousey*, "[t]o help the debtor obtain a fresh start, the Bankruptcy Code permits him to *withdraw from the estate* certain *interests in* property, such as his car or home, *up to certain values*." 544 U. S., at 325 (emphasis added). The Code limits exemptions in this fashion because every asset the Code permits a debtor to withdraw from the estate is an asset that is not available to his creditors. See §522(b)(1). Congress balanced the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on creditors, and it is not for us to alter this balance by requiring trustees to object to claimed exemptions based on form entries beyond those that govern an exemption's validity under

the Code.  See *Lamie*, 540 U. S., at 534, 538; *Hartford*, 530
U. S., at 6; *United States* v. *Locke*, 471 U. S. 84, 95 (1985).

Reilly nonetheless contends that our approach creates
perverse incentives for trustees and creditors to sleep on
their rights.  See Brief for Respondent 64, n. 10, 67–69.
Again, we disagree.  Where a debtor intends to exempt
nothing more than an interest worth a specified dollar
amount in an asset that is not subject to an unlimited or
in-kind exemption under the Code, our approach will
ensure clear and efficient resolution of competing claims to
the asset's value.  If an interested party does not object to
the claimed interest by the time the Rule 4003 period
expires, title to the asset will remain with the estate pur-
suant to §541, and the debtor will be guaranteed a pay-
ment in the dollar amount of the exemption.  If an inter-
ested party timely objects, the court will rule on the
objection and, if it is improper, allow the debtor to make
appropriate adjustments.[18]

Where, as here, it is important to the debtor to exempt
the full market value of the asset or the asset itself, our
decision will encourage the debtor to declare the value of
her claimed exemption in a manner that makes the scope
of the exemption clear, for example, by listing the exempt
value as "full fair market value (FMV)" or "100% of

––––––––––

[18]We disagree that Reilly's approach to exemptions would more effi-
ciently dispose of competing claims to the asset.  On Reilly's view, a
trustee would be encouraged (if not obliged) to object to claims to
exempt a specific dollar amount of interest in an asset whenever the
value of the exempt interest equaled the debtor's estimate of the asset's
market value.  Where the debtor genuinely intended to claim nothing
more than the face value of the exempt interest (which is rational if a
debtor wishes to ensure that his aggregate exemptions remain within
statutory limits), such an approach would engender needless objections
and litigation, particularly if the equation that would precipitate the
objection often results from a default software entry.  See Reply Brief
for Petitioner 15; Brief for Nat. Assn. of Bankruptcy Trustees 13, n. 15.

FMV."[19] Such a declaration will encourage the trustee to object promptly to the exemption if he wishes to challenge it and preserve for the estate any value in the asset beyond relevant statutory limits.[20] If the trustee fails to object, or if the trustee objects and the objection is overruled, the debtor will be entitled to exclude the full value of the asset. If the trustee objects and the objection is sustained, the debtor will be required either to forfeit the portion of the exemption that exceeds the statutory allowance, or to revise other exemptions or arrangements with her creditors to permit the exemption. See Fed. Rule

––––––––––

[19] The dissent's observations about the poor fit between our admonition and a form entry calling for a dollar amount, see *post*, at 15, simply reflect the tension between the Code's definition of "property claimed as exempt" (*i.e.*, an interest, not to exceed a certain dollar amount, *in* Reilly's business equipment) and Reilly's attempt to convert into a dollar value an improper claim to exempt the equipment itself, "'whatever [its value] turns out to be.'" *In re Reilly*, 534 F. 3d 173, 178–179 (CA3 2008). As the dissent concedes, "[s]ection 522(d) catalogs exemptions of two types." *Post*, at 7, n. 5. "Most exemptions—and all of those Reilly invoked—place a monetary limit on the value of the property the debtor may reclaim," and such exemptions are distinct from those made pursuant to Code provisions that "authoriz[e] reclamation of the property in full without any cap on value." *Ibid*. Nothing about Reilly's Schedule entries establishes that Schwab should have treated Reilly's claim for $10,718, an unobjectionable amount under the Code provisions she expressly invoked, as an objectionable claim for thousands of dollars more than those provisions allow, or as a claim for an uncapped exemption under Code provisions she did not invoke and the dissent admits are "not at issue here." *Ibid*.

[20] A trustee will not always file an objection. As the United States observes, Schwab did not do so in this case with respect to certain assets (perishable foodstuffs from Reilly's commercial kitchen) that could not be readily sold. See Brief for United States as *Amicus Curiae* 28, n. 7 (explaining that Schwab could have objected to Reilly's claim of a wildcard exemption for an interest in the food totaling $2,036 because this claim, combined with her wildcard claims for an interest of $8,868 in her business equipment and interests totaling $26 in her bank accounts, placed the total value of the interests she claimed exempt under the wildcard provision $975 above then-applicable limits).

Bkrtcy. Proc. 1009(a). Either result will facilitate the expeditious and final disposition of assets, and thus enable the debtor (and the debtor's creditors) to achieve a fresh start free of the finality and clouded-title concerns Reilly describes. See Brief for Respondent 57–59 (arguing that "[u]nder [Schwab's] interpretation of Rule 4003(b), a debtor would never have the certainty of knowing whether or not he or she may keep her exempted property until the case had ended"); *id.*, at 66.[21]

For all of these reasons, the policy considerations Reilly cites support our approach. Where, as here, a debtor accurately describes an asset subject to an exempt interest and on Schedule C declares the "value of [the] claimed exemption" as a dollar amount within the range the Code allows, interested parties are entitled to rely upon that value as evidence of the claim's validity. Accordingly, we hold that Schwab was not required to object to Reilly's claimed exemptions in her business equipment in order to

---

[21] Reilly's clouded-title argument arises only if one accepts her flawed conception of the exemptions in this case. According to Reilly, "once the thirty-day deadline passed without objection" to her claim, she was "entitled to know that she would emerge from bankruptcy with her cooking equipment intact." Brief for Respondent 57. There are two problems with this argument. First, it assumes that the property she claimed as exempt was the full value of the equipment. That assumption is incorrect for the reasons we explain. Second, her argument assumes that a claim to exempt the full value of the equipment would, if unopposed, entitle her to the equipment itself as opposed to a payment equal to the equipment's full value. That assumption is at least questionable. Section 541 is clear that title to the equipment passed to Reilly's estate at the commencement of her case, and §§522(d)(5) and (6) are equally clear that her reclamation right is limited to exempting an interest in the equipment, not the equipment itself. Accordingly, it is far from obvious that the Code would "entitle" Reilly to clear title in the equipment even if she claimed as exempt a "full" or "100%" interest in it (which she did not). Of course, it is likely that a trustee who fails to object to such a claim would have little incentive to do anything but pass title in the asset to the debtor. But that does not establish the statutory entitlement Reilly claims.

preserve the estate's right to retain any value in the equipment beyond the value of the exempt interest. In reaching this conclusion, we express no judgment on the merits of, and do not foreclose the courts from entertaining on remand, procedural or other measures that may allow Reilly to avoid auction of her business equipment.

\*  \*  \*

We reverse the judgment of the Court of Appeals for the Third Circuit and remand this case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 08–538

WILLIAM G. SCHWAB, PETITIONER *v.* NADEJDA
REILLY

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[June 17, 2010]

JUSTICE GINSBURG, with whom THE CHIEF JUSTICE and
JUSTICE BREYER join, dissenting.

In Chapter 7 bankruptcies, debtors must surrender to
the trustee-in-bankruptcy all their assets, 11 U. S. C.
§541, but may reclaim for themselves exempt property,
§522. Within 30 days after the meeting of creditors, the
trustee or a creditor may file an objection to the debtor's
designation of property as exempt. Fed. Rule Bkrtcy.
Proc. 4003(b). Absent timely objection, "property claimed
[by the debtor] as exempt . . . is exempt." §522(*l*).

The trustee in this case, petitioner William G. Schwab,
maintains that the obligation promptly to object to exemp-
tion claims extends only to the qualification of an asset as
exemptible, not to the debtor's valuation of the asset.
Respondent Nadejda Reilly, the debtor-in-bankruptcy,
urges that the timely objection requirement applies not
only to the debtor's designation of an asset as exempt; the
requirement applies as well, she asserts, to her estimate of
the asset's market value. That is so, she reasons, because
the asset's current dollar value is critical to the determi-
nation whether she may keep the property intact and
outside bankruptcy, or whether the trustee, at any time
during the course of the proceedings, may sell it.

The Court holds that challenges to the debtor's valua-
tion of exemptible assets need not be made within the 30-

day period allowed for "objection[s] to the list of property claimed as exempt." Rule 4003(b). Instead, according to the Court, no time limit constrains the trustee's (or a creditor's) prerogative to place at issue the debtor's evaluation of the property as fully exempt.

The Court's decision drastically reduces Rule 4003's governance, for challenges to valuation have been, until today, the most common type of objection leveled against exemption claims. See 9 Collier on Bankruptcy ¶4003.04, p. 4003–15 (rev. 15th ed. 2009) (hereinafter Collier) ("Normally, objections to exemptions will focus primarily on issues of valuation."). In addition to departing from the prevailing understanding and practice, the Court's decision exposes debtors to protracted uncertainty concerning their right to retain exempt property, thereby impeding the "fresh start" exemptions are designed to foster. In accord with the courts below, I would hold that a debtor's valuation of exempt property counts and becomes conclusive absent a timely objection.

I

Nadejda Reilly is a cook who operated a one-person catering business. Unable to cover her debts, she filed a Chapter 7 bankruptcy petition appending all required schedules and statements. Relevant here, her filings included a form captioned "Schedule B - Personal Property," which called for enumeration of "all personal property of the debtor of whatever kind." App. 40a. On that all-encompassing schedule, Reilly listed "business equipment," *i.e.*, her kitchen equipment, with a current market value of $10,718. *Id.*, at 49a.

Reilly also filed the more particular form captioned "Schedule C - Property Claimed as Exempt." *Id.*, at 56a. Schedule C contained four columns, the first headed "Description of Property"; the second, "Specify Law Providing Each Exemption"; the third, "Value of Claimed Exemp-

tion"; and the fourth, "Current Market Value of Property Without Deducting Exemptions." *Id.*, at 57a. In the first column of Schedule C, Reilly wrote, as she did in Schedule B's description-of-property column: "See attached list of business equipment." *Id.*, at 58a. On the list appended to Schedules B and C, Reilly set out by hand a 31-item inventory of her restaurant-plus-catering-venture equipment. Next to each item, *e.g.*, "Dough Mixer," "Gas stove," "Hood," she specified, first, the purchase price and, next, "Today's Market Value," which added up to $10,718 for the entire inventory. *Id.*, at 51a–55a.[1]

As the laws securing exemption of her kitchen equipment, Reilly specified in the second Schedule C column, §552(d)(6), the exemption covering trade tools, and §552(d)(5), the "wildcard" exemption. *Id.*, at 58a.[2] In the value-of-claimed-exemption column, she listed $1,850, then the maximum trade-tools exemption, and $8,868, drawn from her wildcard exemption, amounts adding up to $10,718. *Ibid.* And in the fourth, current-market-value, column, she recorded $10,718, corresponding to the total market value she had set out in her inventory and reported in Schedule B. *Ibid.*

Before the 30-day clock on filing objections had begun to run, an appraiser told Schwab that Reilly's equipment was worth at least $17,000. Brief for Petitioner 15; App. 164a. Nevertheless, Schwab did not object to the $10,718 market value Reilly attributed to her business equipment in

---

[1] Reilly's Schedules B and C, and the inventory she attached to the forms, are reproduced in an Appendix to this opinion.

[2] Unlike exemptions that describe the specific property debtors may preserve, *e.g.,* 11 U. S. C. §522(d)(6) (debtor may exempt her "aggregate interest, not to exceed [$1,850] in value, in any implements, professional books, or tool[s] of [her] trade"), the "wildcard" exemption permits a debtor to shield her "aggregate interest in any property" she chooses, up to a stated dollar limit, §522(d)(5); *In re Smith*, 640 F. 2d 888, 891 (CA7 1981).

Schedule C and the attached inventory. Instead, he allowed the limitations period to lapse and then moved, unsuccessfully, for permission to sell the equipment at auction. *Id.*, at 141a–143a.[3]

From Reilly's filings, the Bankruptcy Judge found it evident that Reilly had claimed the property itself, not its dollar value, as exempt. *Id.*, at 168a–169a ("I know there's an argument . . . that . . . the property identified as exempt is really the [valuation] column, [*i.e.,* $10,718,] but that's not what the forms say. The forms say property declared as exempt and to see attached list. So, they're exempting all the property. . . . If the Trustee believes that . . . all the property cannot be exempt, [he] should object to it.").

The District Court and Court of Appeals similarly concluded that, by listing the identical amount, $10,718, as the property's market value and the value of the claimed exemptions, Reilly had signaled her intention to safeguard all of her kitchen equipment from inclusion in the bankruptcy estate. *In re Reilly*, 403 B. R. 336, 338–339 (MD Pa. 2006); *In re Reilly,* 534 F. 3d 173, 178 (CA3 2008). Both courts looked to §522(*l*) and Federal Rule of Bankruptcy Procedure 4003(b), which state, respectively:

> "The debtor shall file a list of property that the debtor claims as exempt . . . . Unless a party in interest objects, the property claimed as exempt on such list is exempt." §522(*l*).

─────────

[3] Schwab informed Reilly at the meeting of creditors that he planned to sell all of her business equipment. App. 137a. She promptly moved to dismiss her bankruptcy petition, stating that her "business equipment . . . is necessary to her livelihood and art, and was a gift to her from her parents." *Id.*, at 138a. She "d[id] not desire to continue with the bankruptcy," she added, because "she wishe[d] to continue in restaurant and catering as her occupation." *Ibid.* The Bankruptcy Court denied Reilly's dismissal motion simultaneously with Schwab's motion to sell Reilly's equipment. *Id.*, at 149a–170a.

"A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under §341(a) is concluded . . . .  The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension."  Rule 4003(b).[4]

Schwab having filed no objection within the allowable 30 days, each of the tribunals below ruled that the entire inventory of Reilly's business equipment qualified as exempt in full.  App. 168a; 403 B. R., at 339; 534 F. 3d, at 178.  The leading treatise on bankruptcy, the Court of Appeals noted, *id.*, at 180, n. 4, is in accord:

"Normally, if the debtor lists property as exempt, that listing is interpreted as a claim for exemption of the debtor's entire interest in the property, and the debtor's valuation of that interest is treated as the amount of the exemption claimed.  Were it otherwise—that is, if the listing were construed to claim as exempt only that portion of the property having the value stated—the provisions finalizing exemptions if no objections are filed would be rendered meaningless.  The trustee or creditors could [anytime] claim that the debtor's interest in the property was greater than the value claimed as exempt and [then] object to the debtor exempting his or her entire interest in the property after the deadline for objections had passed." 9 Collier ¶4003.02[1], pp. 4003–4 to 4003–5.

Agreeing with the courts below, I would hold that Reilly, by her precise identification of the exempt property, and her specification of $10,718 as both the current market value of her kitchen equipment and the value of the

———————

[4] In 2008, this prescription was recodified without material change and designated Rule 4003(b)(1).

claimed exemptions, had made her position plain: She claimed as exempt the listed property itself—not the dollar amount, up to $10,718, that sale of the property by Schwab might yield. Because neither Schwab nor any creditor lodged a timely objection, the listed property became exempt, reclaimed as property of the debtor, and therefore outside the bankruptcy estate the trustee is charged to administer.

## II
### A

Pursuant to §522(*l*), Reilly filed a list of property she claimed as exempt from the estate-in-bankruptcy. Her filing left no doubt that her exemption claim encompassed her entire inventory of kitchen equipment. Schwab, in fact, was fully aware of the nature of the claim Reilly asserted. At the meeting of creditors, Reilly reiterated that she sought to keep the equipment in her possession; she would rather discontinue the bankruptcy proceeding, she made plain, than lose her equipment. See *supra*, at 4, n. 3. Bankruptcy Rule 4003(b) requires the trustee, if he contests the debtor's exemption claim in whole or part, to file an objection within 30 days after the meeting of creditors. Absent a timely objection, "the property claimed as exempt . . . is exempt." §522(*l*); Rule 4003. That prescription should be dispositive of this case.

The Court holds, however, that Schwab was not obliged to file a timely objection to the exemption Reilly claimed, and indeed could auction off her cooking equipment anytime prior to her discharge. In so holding, the Court decrees that no objection need be made to a debtor's valuation of her property.

To support the conclusion that Rule 4003's timely objection requirement does not encompass the debtor's estimation of her property's market value, the Court homes in on the language of exemption prescriptions that are subject to

a monetary cap.[5]  Those prescriptions, the Court points out, "define the 'property' a debtor may 'clai[m] as exempt' as the debtor's 'interest'—up to a specified dollar amount—in the assets described in the category, *not* as the assets themselves." *Ante*, at 10.  So long as a debtor values her claimed exemption at a dollar amount below the statutory cap, the Court reasons, the claim is on-its-face permissible no matter the market value she ascribes to the asset.  To evaluate the propriety of Reilly's declared "interest" in her kitchen equipment, the Court concludes, Schwab was obliged promptly to inspect "three, and only three, entries on Reilly's Schedule C: the description of the business equipment . . . ; the Code provisions governing the claimed exemptions; and the amounts Reilly listed in the column titled 'value of claimed exemption.'" *Ante,* at 12–13.[6]

————————

[5] Section 522(d) catalogs exemptions of two types.  Most exemptions—and all of those Reilly invoked—place a monetary limit on the value of the property the debtor may reclaim.  See, *e.g.,* §522(d)(2) ("motor vehicle"); §522(d)(3) ("household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments"); §522(d)(4) ("jewelry").  For certain exemptions not at issue here, the Bankruptcy Code authorizes reclamation of the property in full without any cap on value.  See, *e.g.,* §522(d)(7) ("unmatured life insurance contract"); §522(d)(9) ("[p]rofessionally prescribed health aids"); §522(d)(11)(A) ("award under a crime victim's reparation law").

[6] In support of its view that market value is not relevant to determining the "property claimed as exempt" for purposes of Rule 4003(b)'s timely objection mandate, the Court observes that Schedule C did not require the debtor to list this information until 1991.  *Ante*, at 14–15.  Prior to 1991, however, debtors recorded market value on a different schedule.  See Interim Fed. Rule Bkrtcy. Proc. Official Form 6, Schedule B–2 (1979) (requiring debtor to list the "[m]arket value of [her] interest [in personal property] without deduction for . . . exemptions claimed").  Trustees assessing the "property claimed as exempt," therefore, have always been able, from the face of the debtor's filings, to compare the value of the claimed exemption to the property's declared market value.  See Brief for National Association of Consumer Bankruptcy Attorneys et al. as *Amici Curiae* 34.

## B

The Court's account, however, shuts from sight the vital part played by the fourth entry on Schedule C—current market value—when a capped exemption is claimed. A debtor who estimates a market value *below* the cap, and lists an identical amount as the value of her claimed exemption, thereby signals that her aim is to keep the listed property in her possession, outside the estate-in-bankruptcy. In contrast, a debtor who estimates a market value *above* the cap, and above the value of her claimed exemption, thereby recognizes that she cannot shelter the property itself and that the trustee may seek to sell it for whatever it is worth.[7] Schedule C's final column, in other words, alerts the trustee whether the debtor is claiming a right to retain the listed property itself as her own, a right secured to her if the trustee files no timely objection.[8]

Because an asset's market value is key to determining

---

[7] By authorizing exemption of assets that a debtor would want to keep in kind, such as her jewelry and car, but limiting the exemptible value of this property, Congress struck a balance between debtors' and creditors' interests: Debtors can reclaim items helpful to their fresh start after bankruptcy, but only if those items are of modest value. Assets of larger worth, however, are subject to liquidation so that creditors may obtain a portion of the item's value. Cf. *In re Price*, 370 F. 3d 362, 378 (CA3 2004) ("[B]ankruptcy law is bilateral, replete with protections and policy considerations favoring both debtors and creditors.").

[8] The significance of market value is what differentiates capped exemptions from uncapped ones that permit debtors to exempt certain property in kind regardless of its worth. See *supra*, at 7, n. 5. For uncapped exemptions, the nature of the property the debtor has reclaimed is clear: If the exemption is valid, the debtor gets the asset in full every time. For capped exemptions, however, market value is a crucial component in determining whether the debtor gets the item itself or a sum of money representing a share of the item's liquidation value. Reading Bankruptcy Rule 4003(b) to require objections to valuation thus does not, as the Court contends, "*elid[e]* the distinction" between capped and uncapped exemptions, *ante*, at 12 (emphasis added), but instead *accounts for* that distinction.

the character of the interest the debtor is asserting in that asset, Rule 4003(b) is properly read to require objections to valuation within 30 days, just as the Rule requires timely objections to the debtor's description of the property, the asserted legal basis for the exemption, and the claimed value of the exemption. See 4 Collier ¶522.05[1], p. 522–28 (rev. 15th ed. 2005) ("[T]o evaluate the propriety of the debtor's claim of exemption," trustees need the information in all four columns of Schedule C; "[market] value" is "essential" to judging whether the claim is proper because "[e]xemption provisions often are limited according to . . . [the property's] value."). [9]

## C

Requiring objections to market valuation notably facilitates the debtor's fresh start, and thus best fulfills the prime purpose of the exemption prescriptions. See, *e.g., Burlingham* v. *Crouse*, 228 U. S. 459, 473 (1913) (Bankruptcy provisions "must be construed" in light of policy "to give the bankrupt a fresh start."). See also *Rousey* v.

---

[9] Suggesting that this interpretation of Rule 4003(b) "lacks statutory support," *ante*, at 13, n. 11, the Court repeatedly emphasizes that the Bankruptcy Code defines the "property claimed as exempt," to which a trustee must object, as "the debtor's 'interest'—up to a specified dollar amount—in the assets described in [capped exemption] categor[ies]," *ante*, at 10; see, *e.g., ante*, at 11; *ibid.*, n. 9; *ante*, at 21, n. 19. But the commonly understood definition of a property "interest" is "[a] legal share in something; all or part of a legal or equitable claim to or right in property. . . . Collectively, the word includes any aggregation of [such] rights." Black's Law Dictionary 828 (8th ed. 2004). Schwab, therefore, could not comprehend whether Reilly claimed a monetary or an in-kind "interest" in her kitchen equipment without comparing her market valuation of the equipment to the value of her claimed exemption. See *supra*, at 8–9. In line with the statutory text, a debtor's market valuation is an essential factor in determining the nature of the "interest" a debtor lists as exempt. Bankruptcy "forms, rules, treatise excerpts, and policy considerations," *ante*, at 7, n. 5, corroborate, rather than conflict with, this reading of the Code.

*Jacoway*, 544 U. S. 320, 325 (2005); *United States* v. *Security Industrial Bank*, 459 U. S. 70, 72, n. 1 (1982); *ante*, at 19. The 30-day deadline for objections, this Court has recognized, "prompt[s] parties to act and . . . produce[s] finality." *Taylor* v. *Freeland & Kronz*, 503 U. S. 638, 644 (1992). As "there can be no possibility of further objection to the exemptions" after this period elapses, the principal bankruptcy treatise observes, "if the debtor is not yet in possession of the property claimed as exempt, it should be turned over to [her] at this time to effectuate fully the fresh start purpose of the exemptions." 9 Collier ¶4003.03[3], p. 4003–13.

With the benefit of closure, and the certainty it brings, the debtor may, at the end of the 30 days, plan for her future secure in the knowledge that the possessions she has exempted in their entirety are hers to keep. See 534 F. 3d, at 180. If she has reclaimed her car from the estate, for example, she may accept a job not within walking distance. See Brief for National Association of Consumer Bankruptcy Attorneys et al. as *Amici Curiae* 2–3 (hereinafter NACBA Brief). Or if she has exempted her kitchen equipment, she may launch a new catering venture. See App. 138a (Reilly "wishe[d] to continue in restaurant and catering as her occupation" postbankruptcy.).

By permitting trustees to challenge a debtor's valuation of exempted property anytime before discharge, the Court casts a cloud of uncertainty over the debtor's use of assets reclaimed in full. If the trustee gains a different opinion of an item's value months, even years, after the debtor has filed her bankruptcy petition,[10] he may seek to repossess the asset, auction it off, and hand the debtor a check for

---

[10] Schwab states that "[c]ases in which there are assets to administer . . . can take 'one to four years' to complete." Brief for Petitioner 32 (quoting Dept. of Justice, U. S. Trustee Program, Preliminary Report on Chapter 7 Asset Cases 1994 to 2000, p. 7 (June 2001)).

the dollar amount of her claimed exemption.[11] With this threat looming until discharge, "[h]ow can debtors reasonably be expected to restructure their affairs"? NACBA Brief 25. See *In re Polis*, 217 F. 3d 899, 903 (CA7 2000) (Posner, J.) ("If the assets sought to be exempted by the debtor were not valued at a date early in the bankruptcy proceeding, neither the debtor nor the creditors would know who had the right to them.").

## III

The Court and Schwab raise three concerns about reading Rule 4003 to require timely objection to the debtor's estimate of an exempt asset's market value: Would trustees face an untoward administrative burden? Would trustees lack fair notice of the need to object? And would debtors be tempted to undervalue their property in an effort to avoid the monetary cap on exemptions? In my judgment, all three questions should be answered no.

## A

The Court suggests that requiring timely objections to a debtor's valuation of exempt property would saddle trustees with an unmanageable load. See *ante*, at 18 (declining to "expand . . . the universe of information an interested party must consider in evaluating the validity of a claimed exemption"). See also Brief for Petitioner 32–33; Brief for United States as *Amicus Curiae* 24.[12] But trus-

_____

[11] Money generated by liquidation of an asset will often be of less utility to a debtor, who will have to pay more to replace the item. See H. R. Rep. No. 95–595, p. 127 (1977) (noting that "household goods have little resale value" but "replacement costs of the goods are generally high").

[12] This concern is questionable in light of the prevailing practice, for, as earlier noted, valuation objections are the most common Rule 4003(b) challenge. See *supra*, at 2. By lopping off valuation disagreements from the timely objection requirement, see, *e.g., ante*, at 10–11, n. 8, the Court so severely shrinks the Rule's realm that this question

tees, sooner or later, must attempt to ascertain the market
value of exempted assets. They must do so to determine
whether sale of the items would likely produce surplus
proceeds for the estate above the value of the claimed
exemption, see §704(a)(1); the only question, then, is *when*
this market valuation must occur—(1) within 30 days or
(2) at any time before discharge? Removing valuation
from Rule 4003's governance thus does little to reduce the
labors trustees must undertake.

The 30-day objection period, I note, does not impose on
trustees any *additional* duty, but rather guides the exer-
cise of *existing* responsibilities; under Rule 4003(b), a
trustee must rank evaluation of the debtor's exemptions as
a priority item in his superintendence of the estate.[13] And
if the trustee entertains any doubt about the accuracy of a
debtor's estimation of market value, the procedure for
interposing objections is hardly arduous. The trustee need
only file with the court a simple declaration stating that
an item's value exceeds the amount listed by the debtor.[14]

———————

arises: Why are trustees granted a full 30 days to lodge objections?
Under the Court's reading of the Rule, trustees need only compare a
debtor's Schedule C to the text of the exemption prescriptions to assess
an exemption claim's facial validity, with no further investigation
necessary. That comparison should take no more than minutes, surely
not a month.

[13] Trustees, it bears noting, historically had valuation duties far more
onerous than they have today. Rule 4003's predecessor required
trustees in the first instance, rather than debtors, to estimate the
market value of property claimed as exempt. See Rule 403(b) (1975).
Trustees had to provide this valuation to the court within 15 days of
their appointment. See *ibid.*

[14] The leading bankruptcy treatise supplies an illustrative valuation
objection:

"*[Name of Trustee]*, the duly qualified and acting trustee of the estate
of the debtor, would show the court the following:

"1. The debtor is not entitled under [the automobile exemption] to an
interest of more than $3,225 in an automobile. The automobile claimed
by debtor as exempt . . . has a value substantially greater than $3,225.

If the trustee needs more than 30 days to assess market value, moreover, the time period is eminently extendable. Rule 4003(b) prescribes that a trustee may, for cause, ask the court for an extension of the objection period. Alternatively, the trustee can postpone the conclusion of the meeting of creditors, from which the 30-day clock runs, simply by adjourning the meeting to a future date. Rule 2003(e). A trustee also may examine the debtor under oath at the creditors' meeting, Rule 2003(b)(1); if he gathers information impugning her exemption claims, he may ask the bankruptcy court to hold a hearing to determine valuation issues, Rule 4003(c). See *Taylor*, 503 U. S., at 644 ("If [the trustee] did not know the value of [a claimed exemption], he could have sought a hearing on the issue . . . or . . . asked the Bankruptcy Court for an extension of time to object."). See also NACBA Brief 19, 21–23 (listing ways trustees may enlarge the limitations period for objections). Trustees, in sum, have ample mechanisms at their disposal to gain the time and information they need to lodge objections to valuation.

## B

On affording trustees fair notice of the need to object, the Court emphasizes that a debtor must list her claimed exemptions "in a manner that makes the scope of the exemption clear." *Ante*, at 20. If a debtor wishes to exempt property in its entirety, for example, the Court counsels her to write "full fair market value (FMV)" or "100% of FMV" in Schedule C's value-of-claimed-exemption column.

———————

.　　　.　　　.　　　.　　　.

"WHEREFORE Trustee prays that the court determine that debtor is not entitled to . . . the exemptio[n] claimed by him, that the [property claimed as exempt] which [is] disallowed be turned over to the trustee herein as property of the estate, and that he have such other and further relief as is just." 13A Collier §CS17.14, p. CS 17–22 (rev. 15th ed. 2009). See also Rules 9013–9014.

*Ante*, at 20–21 (internal quotation marks omitted). See also Tr. of Oral Arg. 6–7, 26–29; *In re Hyman*, 967 F. 2d 1316, 1319–1320, n. 6 (CA9 1992) (Trustees must be able to assess the validity of an exemption from the face of a debtor's schedules.). Our decision in *Taylor* v. *Freeland & Kronz*, the Court notes, is instructive. In *Taylor*, the debtor recorded the term "$ *unknown*" as the value of a claimed exemption, which, the Court observes, raised a "warning fla[g]" because the value "was *not* plainly within the limits the Code allows." *Ante*, at 17.

True, a debtor's schedules must give notice sufficient to cue the trustee that an objection may be in order. But a "warning flag" is in the eye of the beholder: If a debtor lists identical amounts as the market value of exempted property and the value of her claimed exemption, she has, *on the face of her schedules*, reclaimed the entire asset just as surely as if she had recorded "100% of FMV" in Schedule C's value-of-claimed-exemption column. See Brief for Respondent 36. See also 9 Collier ¶4003.03[3], p. 4003–14 ("*Only* when a debtor's schedules specifically value the debtor's interest in the property at an amount *higher* than the amount claimed as exempt can it be argued that a part of the debtor's interest in property has not been exempted." (emphasis added)).

In this case, by specifying $10,718 as both the current market value of her kitchen equipment and the value of her claimed exemptions, Reilly gave notice that she had reclaimed the listed property in full. See *supra*, at 2–6. To borrow the Court's terminology, Reilly waved a "warning flag" that should have prompted Schwab to object if he believed the equipment could not be reclaimed in its entirety because its value exceeded the statutory cap. 534 F. 3d, at 179. See 4 Collier ¶522.05[2][b], p. 522–33 ("Normally, if a debtor lists an asset as having a particular value in the schedules and then exempts that value, the schedules should be read as a claim of exemption for the

entire asset, to which the trustee should object if the trustee believes the asset has been undervalued.").

Training its attention on trustees' needs, moreover, the Court overlooks the debtor's plight. As just noted, the Court counsels debtors wishing to exempt an asset in full to write "100% of FMV" or "full FMV" in the value-of-claimed-exemption column. But a debtor following the instructions that accompany Schedule C would consider such a response nonsensical, for those instructions direct her to "state the *dollar value* of the claimed exemption in the space provided." Fed. Rule Bkrtcy. Proc. Official Form 6, Schedule C, Instruction 5 (1991) (emphasis added). Chapter 7 debtors are often unrepresented. How are they to know they must ignore Schedule C's instructions and employ the "warning flag" described today by the Court, if they wish to trigger the trustee's obligation to object to their market valuation in a timely fashion? See *In re Anderson*, 377 B. R. 865, 875 (Bkrtcy. App. Panel CA6 2007).[15]

C

Schwab finally urges that requiring timely objections to a debtor's market-value estimations "would give debtors a perverse incentive to game the system by undervaluing their assets." Brief for Petitioner 35; see Brief for United States as *Amicus Curiae* 27. The Court rejected an argument along these lines in *Taylor*, and should follow suit here. Multiple measures, *Taylor* explained, discourage undervaluation of property claimed as exempt. 503 U. S.,

―――――――

[15] Trustees, in contrast, are repeat players in bankruptcy court; if this Court required timely objections to market valuation, trustees would, no doubt, modify their practices in response. See 1 Collier ¶8.06[1][c][ii], p. 8–75 (rev. 15th ed. 2009) ("Since *Taylor* [v. *Freeland & Kronz*, 503 U. S. 638 (1992)], trustees rarely fail to closely scrutinize vague exemption claims."). Moreover, because valuation objections are already the norm, see *supra*, at 2, and 11, n. 12, few trustees would have to adjust their behavior.

at 644. Among those measures: The debtor files her exemption claim under penalty of perjury. See Rule 1008. She risks judicial sanction for signing documents not well grounded in fact. Rule 9011. And proof of fraud subjects her to criminal prosecution, 18 U. S. C. §152; extends the limitations period for filing objections to Schedule C, Rule 4003(b); and authorizes denial of discharge, 11 U. S. C. §727(a)(4)(B). See also NACBA Brief 29–33 (detailing additional checks against inadequate or inaccurate filings).

Furthermore, the objection procedure is itself a safeguard against debtor undervaluation. If a trustee suspects that the market value of property claimed as exempt may exceed a debtor's estimate, he should do just what Rule 4003(b) prescribes: "[F]ile an objection . . . within 30 days after the meeting of creditors."

\* \* \*

For the reasons stated, I would affirm the Third Circuit's judgment.

Appendix to opinion of GINSBURG, J.

# APPENDIX

IN RE Reilly, Nadejda _____ Case No. _____
                              Debtor(s)

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "X" in the appropriate position in the column labeled "None". If additional space is needed in any category, attached a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H" for Husband, "W" for Wife, "J" for Joint, or "C" for Community in the column labeled "HWJC." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions only in Schedule C - Property Claimed as Exempt.

Do not include interests in executory contracts and unexpired leases on the schedule. List them in Schedule G - Executory Contracts and Unexpired Leased.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property".

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HWJC | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand. | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Account no. ███████, business account at PNC Bank, Hazleton, PA. Name on account, | | 21.00 |
| | | Personal checking account of debtor with PNC Bank, Hazleton, PA acct. no. ████████ | | 5.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, include audio, video, and computer equipment. | X | | | |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | | Pictures, camera, other personal property for child. | | 1,000.00 |
| 6. Wearing apparel. | | Clothing. | | 1,000.00 |
| 7. Furs and jewelry. | | Jewelry | | 100.00 |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interest in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issue. | X | | | |
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | | Pension fund with International Union Industry. | | 57.92 |
| 12. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 13. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 14. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 15. Accounts receivable. | X | | | |
| 16. Alimony, maintenance, support, and property settlements in which the debtor is or may be entitled. Give particulars. | X | | | |
| 17. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |

SCHEDULE B - PERSONAL PROPERTY

© 1993-2004 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

Appendix to opinion of GINSBURG, J.

IN RE Reilly, Nadejda _____ Case No. _____

_Debtor(s)_

**SCHEDULE B - PERSONAL PROPERTY**
(Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | H W J C | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 18. Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 23. Automobiles, trucks, trailers, and other vehicles and accessories. | | 02 Honda CRV, V.I.N. ◼◼◼◼◼◼◼◼ title holder, American Honda Finance Corp., 470 Granby Rd., Ste. 2, S. Hadley, MA 01075. | | 13,367.00 |
| 24. Boats, motors, and accessories. | X | | | |
| 25. Aircraft and accessories. | X | | | |
| 26. Office equipment, furnishings, and supplies. | X | | | |
| 27. Machinery, fixtures, equipment, and supplies used in business. | | See attached list of business equipment. | | 10,718.00 |
| 28. Inventory. | | Food goods on hand at restaurant of the debtor | | 3,000.00 |
| 29. Animals. | X | | | |
| 30. Crops - growing or harvested. Give particulars. | X | | | |
| 31. Farming equipment and implements. | X | | | |
| 32. Farm supplies, chemicals, and feed. | X | | | |
| 33. Other personal property of any kind not already listed. Itemize. | X | | | |
| | | **TOTAL** | | 29,268.92 |

___0___ continuation sheets attached

SCHEDULE B - PERSONAL PROPERTY

(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules.)

© 1993-2004 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

Appendix to opinion of GINSBURG, J.

Schedule B, attachment in answer to question 27 of the preceeding.        Reilly.

TWO WORLDS BY FINE EUROPEAN
CATERING
AT

CONYNGHAM PA 18219

EQUIPMENT:   Tax is not included.   Today's
                                    Paid        Market Value

① Coffee Maker ① New    $545.00      $250.00.
   Air Pot Brewer
② Soup Warmers ② New
   Anvil (Black & Stainless steel $270.00.   $100.00.
③ 3 Bay Sink ① Used    $350.00      $100.00.

④ Hand Washing sink ① Used.  Free        Free

⑤ Microwave Oven ① Used $120.00      $25.00
   Quasar
⑥ Sandwich Grill ① New    $1897.40      $950.00
   Star Pane Belle Groaed New
⑦ Hot Plate ① New    $378.00      $150.00

⑧ Convection Oven ① New    $2225.00      $1000.00
   Single deck - US Range.       200.00       100.00

Appendix to opinion of GINSBURG, J.

TWO WORLDS' EQUIPMENT

Paid.          Today's
                 revalued value.

(10) Refrigerator 32" (1) New  $1,775.00   $600.00
 11  Turbo Air 2 sliding Door

(11) 56" Refrigerator (1) New   $1,975.00   $800.00
     Turbo Air 2 sliding door
(12) Coffee table   New   $55.00   $30.00
(12a) Grill table   New   $150.00   $50.00
(13) Refrigerated Pastry Case (1) Used $950.00   $400.00 or l.
     Federal  used
(14) Round  Table (3) Used  $100.00   $50.00

(15) Chairs      (9)  New  $458.00     $150.00
     BISTRO CHAIR-BK FRAME
(16) Barstools    (6)  New  $476.92     $160.00
     BURG BLK FRAME
(17) Holding Shelves (3) New $160.00    $80.00

(17) High Chair    (1)  New  $38.16
                             $36.00 ea.  $18.00
     Wooden Mahogany

(20) Cash Register (1) New   $148.00   $70.00

(21) Slicer (1) Used     $150.00   $75.00

(22) Holding Rack Strys  $185.00   $100.00

(23) Dishes, Flatware & others $300.00   $100.00

Appendix to opinion of GINSBURG, J.

FINE EUROPEAN CATERING

AT

Paid　　　Today's
　　　　　Market Value

EQUIPMENT.

① 3 Bay Sink. ① new　　　$ 700,00.　　$ 300.00.

② Hand Washing Sink ① EA　　$36.00　　$10.00.

③ Dough Roller (Sheeter) ① new . $ 2,665.00　　$ 800.0

④ Gas stove ① New　$ 1,000,00　$ 500.00
　U.S Range　① New.

⑤ Hood　　① New $ 2,000.00　$ 1,000.00

⑥ Ref- Freezer. ① New $ 2,200.00　$ 500.00.

⑦ Dough Mixer ① New $ 2300　$ 1,500.00.

⑧. Fire suppresive System $ 1,500.00.　$ 750.00

Appendix to opinion of GINSBURG, J.

IN RE Reilly, Nadejda _____ Case No. _____
                        Debtor(s)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:

(Check one box)

☑ 11 U.S.C. § 522(b)(1): Exemptions provided in 11 U.S.C. § 522(d). NOTE: These exemptions are available only in certain states.

☐ 11 U.S.C. § 522(b)(2): Exemptions available under applicable nonbankruptcy federal laws, state or local law where the debtor's domicile has been located for 180 days immediately preceding the filing of the petition, or for a longer portion of the 180-day period than in any other place, and the debtor's interest as a tenant by the entirety or joint tenant to the extent the interest is exempt from process under applicable nonbankruptcy law.

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT MARKET VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTIONS |
|---|---|---|---|
| **SCHEDULE B - PERSONAL PROPERTY** | | | |
| Account no. ▮▮▮▮▮, business account at PNC Bank, Hazleton, PA. Name on account, ▮▮▮▮▮ | 11 USC § 522(d)(5) | 21.00 | 21.00 |
| Personal checking account of debtor with PNC Bank, Hazleton, PA acct. no. ▮▮▮▮▮ | 11 USC § 522(d)(5) | 5.00 | 5.00 |
| Pictures, camera, other personal property for child. | 11 USC § 522(d)(3) | 1,000.00 | 1,000.00 |
| Clothing. | 11 USC § 522(d)(3) | 1,000.00 | 1,000.00 |
| Jewelry | 11 USC § 522(d)(4) | 100.00 | 100.00 |
| Pension fund with International Union Industry. | 11 USC § 522(d)(10)(E) | 57.92 | 57.92 |
| 02 Honda CRV, V.I.N. ▮▮▮▮▮ title holder, American Honda Finance Corp., 470 Granby Rd., Ste. 2, S. Hadley, MA 01075. | 11 USC § 522(d)(2) | 2,950.00 | 13,367.00 |
| See attached list of business equipment. | 11 USC § 522(d)(6) 11 USC § 522(d)(5) | 1,850.00 8,868.00 | 10,718.00 |
| Food goods on hand at restaurant of the debtor | 11 USC § 522(d)(5) 11 USC § 522(d)(5) | 1,331.00 975.00 | 3,000.00 |

© 1993-2004 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

SCHEDULE C - PROPERTY CLAIMED AS EXEMPT